IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 139,
AFL-CIO,

      Plaintiff/Counter-Defendant,  OPINION AND ORDER

 v.

                      15-cv-236-wmc

WINGRA STONE COMPANY,

      Defendant/Counter-Plaintiff.

---

  In this action, plaintiff International Union of Operating Engineers, Local 319, AFL-CIO ("Local 139") seeks an order confirming the decision, award and supplemental award of an arbitrator regarding a health care coverage dispute with defendant Wingra Stone Company. Wingra seeks an order vacating the same decision and awards. Before the court are the parties' cross motions for summary judgment. (Dkt. ##14, 18.) For the reasons that follow, the court will grant Local 139's motion and deny Wingra's motion. Accordingly, the arbitration award is confirmed.

UNDISPUTED FACTS

**A. The Parties and Principal Actors**

  Local 139 is a labor organization that represents heavy equipment operators and other employees throughout Wisconsin for the purpose of collective bargaining. Local 139 maintains an office within this district, in Madison, Wisconsin. Ryan Oehlhof is an officer and business representative of Local 139, who has worked with employees of

Wingra since 2004. He is involved in handling disputes between Local 139 and employers such as Wingra.

Wingra Stone Company is an employer based in southern Wisconsin, primarily engaged in the business of road construction, as well as processing and supplying aggregate material, including operating various quarries. Wingra does business in Wisconsin. It also maintains an office in Madison, Wisconsin. Robert Shea is an officer and employee of Wingra. He has been actively involved in negotiations with Local 139 from the late 1990s through the present.

### B. Collective Bargaining Agreements

The parties have had a bargaining relationship for the past 40 years. Beginning in 2004, they have been bound by a series of collective bargaining agreements covering Wingra's quarry operations. The first agreement governed the parties' relationship for five years ("the 2004 Agreement"). In 2009, the parties entered into a Letter of Understanding extending the 2004 Agreement through April 30, 2010. The parties entered into a new agreement effective May 1, 2010, through April 30, 2012 ("the 2010 Agreement"). Local 139 and Wingra were subject to the 2010 Agreement at the time Local 139 filed the grievance at issue here.

In 2012, the parties entered into yet another Letter of Understanding extending the 2010 Agreement through April 30, 2014. At the time the parties filed their

respective motions for summary judgment, they were still in the process of negotiating a successor to this extended 2010 Agreement.[1]

All of the collective bargaining agreements between the parties contain the same language regarding health insurance:

> Employer agrees to maintain for all bargaining unit employees who have been employed for more than thirty (30) days a group health and hospitalization insurance plan that will contain coverage equal to or better than the plan provided by the International Union of Operating Engineers Local 139 Health Benefit Fund for the Term of the Agreement and pay the full premium.

(*See, e.g.*, Joint Stip., Ex. B-5 (2010 Agreement) (dkt. #17-6) Art. XV.)

The Local 139 Health Benefit Fund referenced in the language above ("Local 139 Plan") is self-funded and provides health benefits to approximately 8,600 participants. The Local 139 Plan was established in a Trust Agreement negotiated by Local 139 and various employer associations. The Local 139 Plan sets out the benefits it provides to participants in its Summary Plan Description ("SPD"), the most recent of which was effective in 2010.

Finally, all of the parties' collective bargaining agreements also contain the following provision:

> No grievance will be acted upon by either party unless such grievance is filed in writing with the Employer within thirty (30) day period after the alleged violation. Grievances should be null and void if filed after such period.

---

[1] Since filing their motions, however, defendant Wingra filed a motion to supplement the summary judgment record to reflect that effective October 1, 2015, Local 139 informed Wingra that it would no longer act as the Wingra employees' bargaining unit. (Def.'s Mot. to Suppl. Record (dkt. #27) ¶ 1; Zawadsky Decl., Ex. A (dkt. #28-1).) The court discusses any significance of this development in the opinion below.

(Joint Stip., Exs. B-2, B.5 (dkt. ##3, 6) Art. IV § 2.)

### C. 2011 Change to Wingra's Health Insurance Plan

Wingra's employees covered by the series of collective bargaining agreements with Local 139 receive coverage under the Wingra Stone Company Employee Health, Dental and Vision Plan (the "Wingra Plan"), rather than the Local 139 Plan. Since at least 2004, however, Local 139 did not believe that the Wingra Plan was "equal to or better than" the Local 139 Plan. During negotiations of the 2009 Letter of Understanding, Local 139 took the position that the Wingra Plan was not equal to or better than the Local 139 Plan, specifically identifying two areas that Local 139 did not view as comparable: (1) Health Reimbursement Account ("HRA") pre-funding of retiree benefits, and (2) so-called "loss-of-time benefits." At one point, Local 139 agent Oehlhof stated, "The last contract compared health & now our Insurance [under the Local 139 Plan] has surpassed your coverage." (Joint Stip., Ex. 24 (dkt. #17-25) 8.)

Despite this concern, Local 139's membership approved the 2009 decision to extend the 2004 contract one more year. Local 139 did not file a grievance on coverage at that time, nor during negotiations of the 2010 Agreement, challenging the Wingra Plan as not being "equal to or better than" the Local 139 Plan.

In January 2011, Wingra notified its employees of changes to its Plan, including a change to spousal coverage. Specifically, the Plan would no longer provide secondary coverage to spouses eligible for health coverage through the spouse's own employer. After learning of the change to spousal coverage, a Local 139 agent spoke to one of Wingra's owners about how the change was not "equal to or better than" the benefits

4

provided by the Local 139 Plan. The parties, however, were unable to resolve this issue. Local 139 did not file a grievance at that time.

With the assistance of the Local 139 Plan Administrator, Local 139 prepared a chart summarizing the ways in which the Local 139 Plan differed from the Wingra Plan. At a meeting to discuss the differences between the two plans held in the summer of 2011, Local 139 provided a copy of the chart to Wingra. Believing that the Wingra Plan was nevertheless comparable to the Local 139 Plan overall, Wingra remained unwilling to change its Plan.

### D. 2011 Grievance and 2012 Negotiation

On September 23, 2011, Local 139 filed a grievance against Wingra over its claimed failure to provide a health insurance plan that was equal to or better than the Local 139 Plan as required by Section XV of the 2010 Agreement. The grievance sought "[i]mprove[d] coverage to the Wingra Health Benefit Plan, including but not limited to coordinat[ion] of benefits for all aggrieved employees." (Joint Stip., Ex. B-7 (dkt. #17-8) 4.) While the grievance itself simply claimed that Wingra "failed to provide Health Insurance coverage equal to or better than that provided by" the Local 139 Plan (*id.*), plaintiff now claims that the Wingra Plan contained several, specific differences -- listing 15 in its proposed findings of facts -- when compared to the Local 139 Plan, including the spousal coverage issue described above. (Pl.'s PFOFs (dkt. #15) ¶ 23.) Wingra disputes the list to the extent it differs from those found by the arbitrator. (Def.'s Resp. to Pl.'s PFOFs (dkt. #26) ¶ 23.)

5

After Local 139 filed its grievance, the parties met for another discussion. Plaintiff represents, and Wingra does not dispute, that Local 139 expected Wingra to address the spousal coverage issue after the meeting. In fact, the parties continued having phone conversations and exchanged letters. Then in the course of negotiating the successor agreement in 2012, Wingra proposed a change eliminating the "equal to or better than" language from the health coverage provision. Despite this proposal, Wingra simultaneously maintained that the Wingra Plan was still equal to or better than the Local 139 Plan.

In August 2012, Local 139 again asserted that the Wingra Plan was not equal to the Local 139 Plan and it needed to be improved. Still, Local 139 agreed to take Wingra's proposed language change to the bargaining unit for a vote. After the membership voted to reject Wingra's proposal, Local 139 proposed the two-year extension from 2012 to 2014, with no changes to the health benefits provision. Wingra accepted Local 139's proposal with one small change relating to training, which is not material to the present dispute. The parties dispute whether as part of this negotiation, Local 139 withdrew its previously-filed grievance.

### E. Arbitration

Local 139 did not demand arbitration on the pending grievance until almost six months after the parties executed the 2012 Letter of Understanding extending the 2010 Agreement, and more than 27 months after Wingra had eliminated the spousal coverage provision. Nevertheless, in May of 2013, Local 139 did demand arbitration.

In October of 2013, the parties selected James A. Cox to act as arbitrator. The parties stipulated to bifurcating the arbitration, with the initial hearing concerning liability, and remedies to be addressed only if the grievance was sustained. Arbitrator Cox held the initial arbitration hearing on April 15, 2014, in Madison, Wisconsin, with both parties represented by counsel. Both sides then submitted post-hearing briefs.

On July 11, 2014, Arbitrator Cox issued a written decision and award sustaining Local 139's grievance, explaining in part that:

> While benefit coverage equilibrium between the two Plans had been and remains a continuing subject of controversy[,] there is one given--the 139 Health Benefit Plan is the standard against which the Wingra Stone Health Plan coverage is to be measured. Overall coverage in that Plan must be "equal to or better" than provided in the Local 139 Plan. There was no evidence introduced that established Wingra has met this requirement, only comparative documentation that shows they have not.

(Joint Stip., Ex. F (dkt. #17-36) 4.)[2]

After the decision sustaining Local 139's grievance, the parties attempted to resolve the matter, but were unable to do so. Accordingly, Arbitrator Cox held a second hearing on November 18, 2014, concerning the appropriate remedy. At the hearing, Local 139 presented evidence regarding the hourly contribution rate paid by other employers to the Local 139 Plan, as well as the hours worked by covered Wingra

---

[2] In ruling in Local 139's favor, Arbitrator Cox also addressed Wingra's various procedural challenges, including that Local 139: failed to pursue timely arbitration of the September 23, 2011, grievance; failed to timely file a grievance; or otherwise waived its right to arbitration. (*Id.* at 11-12, 15.) The court will also address Arbitrator Cox's reasoning with respect to Wingra's procedural challenges below in the opinion.

employees from the date of the grievance through November 15, 2014. From this evidence, Local 139 sought gross total damages of $202,049.25.

Based on the evidence presented, Arbitrator Cox ultimately awarded Local 139 its requested damages and ordered Wingra to comply with his interpretation of Article XV. In addition, Local 139 presented an explanation of benefits from eleven Wingra employees and sought out-of-pocket expenses paid by specific bargaining unit employees. Because Wingra did not dispute the validity nor accuracy of this information at the hearing, or in its post-hearing brief. Arbitrator Cox also awarded a total of $94,980.90 in damages for these eleven employees reimbursing them for payments Wingra would have been required to make if the Wingra Plan was, in fact, "equal to or better than" the Local 139 Plan.

The February 14, 2015, Supplemental Award also addressed arguments raised by Wingra. To date, Wingra has not modified its Plan or otherwise taken any steps to comply with the agreement, or made any payments towards the damages award.

OPINION

Under Section 301 of the Labor Management Relations Act, a federal court has authority to review an arbitration award made pursuant to a collective bargaining agreement.[3] *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957)). However, "[j]udicial review of arbitration awards is extremely limited."

---

[3] This court has jurisdiction over this action under Section 301(c) of the Labor Management Relations Act, 29 U.S.C. § 185.

*Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010). Courts should not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (*per curiam*).

As such, "[a] reviewing court will enforce the arbitrator's award so long as it 'draws its essence from the contract,' even if the court believes that the arbitrator misconstrued its provisions." *United Food & Comm'l Workers, Local 1546 v. Ill.-Am. Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 38 (1987)). "It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the [parties' agreement]." *Id.* at 755 (quoting *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184-85 (7th Cir. 1985)). An arbitrator is authorized to resolve questions of procedural arbitrability, such as whether the grievance was properly filed. *See Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150,* 639 F.3d 286, 291 (7th Cir. 2011). The arbitrator's resolution of those issues is also entitled to great deference. *Id.*

Here, Wingra asserts three, basic challenges to the arbitrator's award. Although insufficient to overturn the arbitrator's decision given this deferential standard, whether individually or collectively, the court addresses the merits of each challenge below.

I.  **Timeliness Challenge**

First, Wingra contends that the grievance itself was untimely, having been filed more than thirty days *after* an announced change to the spousal coverage provision of the Wingra Plan, rendering it "null and void" under Article IV, § 2 of the 2010 Agreement.[4] After considering Wingra's timeliness challenge, Arbitrator Cox found that Local 139 had actually raised a continuing violation, explaining:

> The violations alleged here are different in kind from *discrete acts* like a discharge since, by their nature, they have <u>repeated adverse effects</u> each time a claim is filed.  In such circumstances, violations are construed by Arbitrators to be repeated from day to day with each considered a separate violation.

(Joint Stip., Ex. F (dkt. #17-36) 11 (emphasis in original).)

In opposition, Wingra directs the court to cases in which an arbitration award was vacated because the grievance was untimely.  In those cases, however, the arbitrator's decision was found to "conflict[] with the express terms of the Agreement, and thus fails to draw from the essence of the Agreement." (Def.'s Opening Br. (dkt. #19) 6 (quoting *Wyandot, Inc. v. Local 227, United Food & Comm'l Workers Union*, 205 F.3d 922, 930 (6th Cir. 2000)).)  The circumstances in *Wyandot* and the other cases cited by Wingra are

---

[4] During the arbitration, Wingra also argued that Local 139 had either withdrawn its grievance through the negotiation process or had otherwise waived its right to arbitration by its delay in seeking to arbitrate its grievance.  While Wingra asserted proposed findings of facts in support of these theories, it did *not* advance these arguments in support of its motion to vacate the arbitration award.  As such, the court need not consider waiver or related arguments.  Even if properly raised, the court notes that it would have viewed the arbitrator's treatment of waiver deferentially, similar to the court's treatment of the arbitrator's rejection of any challenge to the timeliness of the grievance, and likely have found Local 139's regular reminder of an ongoing failure to live up to the parties' collectively bargained health insurance plan was never waived.  If anything, Wingra's repeated concession that its plan needs to be equal to or better than Local 139's Plan amounted to confirmation of the ongoing commitment to honor this clause.

readily distinguishable for the same reason explained in Arbitrator Cox's decision: the events underlying the grievances in those cases were discrete. *See Wyandlot*, 205 F.3d at 924 (reinstatement of discharged union member); *Paper, Allied-Indus., Chemical & Energy Workers, Local Union No. 5-998 v. LWD, Inc.*, 99 F. App'x 683, 684 (6th Cir. 2004) ("promotion of three individuals who were members of the bargaining unit to salaried, supervisory positions outside the bargaining unit"); *R.H. Cochran & Associates, Inc. v. Sheet Metal Workers Int'l Ass'n Local Union No. 33*, No. 1:07CV772, 2008 WL 408462, at *1 (N.D. Ohio Feb. 12, 2008) (policy change in travel reimbursement); *Sunbeam Appliance Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8, AFL-CIO*, 511 F. Supp. 505, 506-07 (N.D. Ill. 1981) (vacation pay dispute).

Here, the grievance was not limited to the discrete 2011 change cover of an employee's spouse if eligible under another employer's plan. Rather, Local 139's grievance is more broadly worded, and the arbitrator interpreted it as a comprehensive challenge to whether the Wingra Plan was equal to or better than the Local 139 Plan: "In their September 2011 Grievance, Local 139 seeks not only that Wingra's unilateral withdrawal of COB coverage be remedied but reasserts the continuing claims of inadequate coverage they had been pursuing since at least 2004." (Joint Stip., Ex. F (dkt. #17-36) 7.)[5] As such, Wingra's contention that the January 2011 announcement of a change to spousal coverage triggered the 30-day period by which Local 139 must file a

---

[5] The date of the grievance is material. As the arbitrator explained, Local 139 "seek[s] a remedy prospectively from the date the Grievance was filed, a request consistent with remedies in continuing violation cases where a present violation exists as in this case. In such cases, Grievants may challenge the present and prospective validity of the coverage but are proscribed from seeking <u>retroactive compensation</u>." (Joint Stip., Ex. F (dkt. #17-36) 7 (emphasis in original).)

11

grievance is premised on a flawed, overly narrow view of the grievance, or at least the arbitrator could reasonably find given the broad, contractual coverage commitment that Wingra repeatedly signed off on in each new collective bargaining agreement.

In its reply in support of its motion for summary judgment, Wingra also argues that Local 139 should have filed a grievance as early as 2004 when it first viewed the Wingra Plan as not comparable to the Local 139 Plan, and by failing to do so, Wingra was deprived of its "rights to have issues settled promptly." (Def.'s Reply (dkt. #29) 4.) On the facts here, Local 139 perhaps could have filed a grievance earlier, but the arbitrator found that Local 139 was not obligated to do so because the violations were "repeated from day to day." (Joint Stip., Ex. F (dkt. #17-36) 10.) Indeed, the bargaining history of the parties demonstrated that the parties were attempting to negotiate this issue without having to go through a formal arbitration process, and would both simply punt the dispute down the road by again adopting the sweeping coverage guarantee without resolving arguable, ongoing shortfalls in the coverage available under the Wingra Plan.

Regardless, the arbitrator interpreted Article IV § 2 to allow for the filing of a grievance based on a continuing violation, and the court's review of an arbitrator's award does not include consideration of whether the arbitrator's interpretation was in error. *See United Food & Comm'l Workers, Local 1546*, 569 F.3d at 754 ("[O]nce we conclude that the arbitrator did in fact interpret the contract, our review is concluded."); *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746, 757 (7th Cir. 2008) ("[T]he question before a federal court is not whether

the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." (internal citation and quotation marks omitted)).[6] Accordingly, the court finds no basis to vacate the award based on the arbitrator's treatment of Wingra's procedural challenge to the timeliness of the grievance.

## II. Scope of Awards

Alternatively, Wingra argues that the arbitrator at least erred in not limiting his review of the comparability of the two health plans to the issue of spousal coverage, because the parties' bargaining history reveals that "Local 139 viewed the plans as comparable (or, at the very least, acquiesced to their comparability) until January 2011 when Wingra eliminated" the spousal coverage benefit. (Def.'s Opening Br. (dkt. #19) 8.) This alternative argument is even more flawed, since it essentially asks this court to overturn a *factual* finding by the arbitrator that Local 139 did *not* waive or otherwise acquiesce to other purported disparities between the Wingra Plan and the Local 139 Plan, which he justified by reference to the parties' bargaining history. (*See* Joint Stip., Ex. F (dkt. #17-36) 3-5 (discussing bargaining history dating back to 1999, including Local 139's repeated complaints about the Wingra Plan and the fact that "there were no

---

[6] In contrast to Wingra's argument generally that the continuing violation doctrine does not apply in the arbitration context (Def.'s Opp'n (dkt. #25) 6-7), the Seventh Circuit has treated favorably an arbitrator's interpretation of a collective bargaining agreement to include a continuing violation. *See Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 472-73 (7th Cir. 2010).

the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." (internal citation and quotation marks omitted)).[6] Accordingly, the court finds no basis to vacate the award based on the arbitrator's treatment of Wingra's procedural challenge to the timeliness of the grievance.

## II. Scope of Awards

Alternatively, Wingra argues that the arbitrator at least erred in not limiting his review of the comparability of the two health plans to the issue of spousal coverage, because the parties' bargaining history reveals that "Local 139 viewed the plans as comparable (or, at the very least, acquiesced to their comparability) until January 2011 when Wingra eliminated" the spousal coverage benefit. (Def.'s Opening Br. (dkt. #19) 8.) This alternative argument is even more flawed, since it essentially asks this court to overturn a *factual* finding by the arbitrator that Local 139 did *not* waive or otherwise acquiesce to other purported disparities between the Wingra Plan and the Local 139 Plan, which he justified by reference to the parties' bargaining history. (*See* Joint Stip., Ex. F (dkt. #17-36) 3-5 (discussing bargaining history dating back to 1999, including Local 139's repeated complaints about the Wingra Plan and the fact that "there were no

---

[6] In contrast to Wingra's argument generally that the continuing violation doctrine does not apply in the arbitration context (Def.'s Opp'n (dkt. #25) 6-7), the Seventh Circuit has treated favorably an arbitrator's interpretation of a collective bargaining agreement to include a continuing violation. *See Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 472-73 (7th Cir. 2010).

relevant changes in Insurance coverage in response" to Local 139's complaints and that the "disparity was [ex]acerbated" in 2011).)

As previously described in the fact and argument sections above, the grievance at issue generally challenged the lack of comparability of the Wingra Plan as compared to the Local 139 Plan. Given the ongoing nature of the parties' dispute on that subject and Wingra's reupping on that issue in each new agreement or extension of agreement, the arbitrator acted within his discretion to consider the full array of evidence in determining that the Wingra Plan was not comparable, and then crafting a remedy based on his factual findings.[7] *See Major League*, 532 U.S. at 509 ("factual errors or misinterpretations of the parties' agreement" do not justify "review of the arbitrator's decision on the merits").

### III. Post-Expiration Damages

Finally, Wingra challenges Arbitrator Cox's decision to award damages through November 15, 2014, despite the last of the parties' collective bargaining agreement expiring on April 30, 2014. At the time Arbitrator Cox issued his award, the parties were still in negotiations, and it appears Arbitrator Cox assumed that the contractual relationship between Wingra and Local 139 would continue, including in particular the contractual term requiring the Wingra Plan to be better than or equal to the Local 139 Plan that is in dispute here. Likely for this reason, Wingra does not point to anything in

---

[7] To the extent Wingra is challenging the arbitrator's consideration of Wingra's treatment of health reimbursement accounts, the court defers to the arbitrator's interpretation of what falls within the scope of the Wingra Plan. (Joint Stip., Ex. K (dkt. #17-52) 3, 5.)

the record demonstrating that during the arbitration, it challenged Arbitrator Cox's award based on the fact that the agreement governing the parties' arbitration expired on April 30, 2014.

Wingra is correct that an arbitrator may lack authority to award damages for a period of time outside of the period covered by the pertinent collective bargaining agreement. *See Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 472 (7th Cir. 2010). On the other hand, as Local 139 argues, during negotiations, "an employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment. (Pl.'s Opp'n (dkt. #23) 7 (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991)).) Unlike the situation in *Prate Installations*, no new contract then existed that limited the arbitrator's authority to extend the remedy period past the time period of the collective bargaining agreement governing the arbitration, nor does it appear that Wingra ever raised, much less preserved, an objection based on this possibility.

In light of the presumption of enforcement of an arbitration award, the court will not vacate or modify the award based on this unexpressed challenge, although Wingra is free to seek clarification from Arbitrator Cox. If it opts to do so, Arbitrator Cox may also consider the fact that as of October 2015, Local 139 is no longer the bargaining unit for Wingra employees. If not, the Arbitrator's original ruling stands.

ORDER

IT IS ORDERED that:

1) plaintiff International Union of Operating Engineers, Local 319, AFL-CIO's motion for summary judgment (dkt. #14) is GRANTED;

2) defendant Wingra Stone Company's motion for summary judgment (dkt. #18) is DENIED;

3) defendant's motion to supplement summary judgment record (dkt. #27) is GRANTED; and

4) the clerk of the court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 29th day of September, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge